UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ASHTON EICH,                      )
                                  )
        Plaintiff,                )
                                  )
v.                                )        Case No. 4:19CV1686 HEA
                                  )
ANDREW M. SAUL,                   )
Commissioner of Social Security,  )
                                  )
        Defendant.                )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court for judicial review of the final decision of the Commissioner of Social Security denying the application of plaintiff for disability insurance benefits under Title II, 42 U.S.C. §§ 401, *et seq*. and denial of supplemental security income benefits under Title XVI, 42 U.S.C. §§ 1381, *et seq*. The Court has reviewed the filings and the administrative record as a whole which includes the hearing transcript and medical evidence. The decision of the Commissioner will be affirmed.

## Background

Plaintiff protectively filed for Disability Insurance Benefits and Supplemental Security Income on August 16, 2016, alleging disability beginning July 6, 1992. He received an initial denial on October 14, 2016. Plaintiff filed a

timely Request for Hearing on November 21, 2016. He attended a hearing before

ALJ Chandreka Allen on June 28, 2018.  The ALJ rendered an unfavorable

decision dated October 25, 2018. In the decision, the ALJ found Plaintiff had the

severe impairments of learning disability, depression, panic disorder, and schizoid

personality disorder. While the ALJ found none of Plaintiff's impairments met or

equaled a listed impairment, she did find some limitations. Specifically, the ALJ

found Plaintiff retained the residual functional capacity ("RFC") to perform:

> a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is limited to simple, routine, repetitive tasks with few changes in the work setting. He should have only occasional interaction with supervisors and coworkers, no interaction with the general public, and no tandem tasks.

Based on vocational expert testimony, the ALJ found Plaintiff, who has no

past relevant work history, could perform work such as bagger of laundry, packer

of shoes, and machine feeder.

Plaintiff filed a timely Request for Review of Hearing Decision on

December 4, 2018. The Appeals Council, on April 16, 2019, denied the request.

Plaintiff has exhausted all administrative remedies. Thus, the decision of the ALJ

stands as the final decision of the Commissioner.

## Record Evidence

The following evidence, along with other evidence discussed in this

Opinion, Memorandum, and Order, appears in the record:

Plaintiff was born on July 6, 1992. In school, Plaintiff had an IEP, was identified as having a learning disability in math reasoning, math calculation, and written expression. Although Plaintiff's social skills were limited, they were also adequate to be part of a group and engage with other students in a limited fashion. Plaintiff dropped out of school in 10th grade.

In 2013, Plaintiff visited Justin Adamo, Ph.D at Family Life Counseling for individual psychotherapy to address his phobia of needles. Plaintiff's stated that his goal for therapy was to not be anxious around needles and to not anxiety attacks when injected. Dr. Adamo made generally normal findings regarding Plaintiff's mental status at their first meeting. Dr. Adamo gave Plaintiff "homework" to address his phobia at each meeting; Plaintiff reported completing Dr. Adamo's "homework" at each subsequent visit.

On January 27, 2016, Plaintiff was examined by Lisa McGrath, Ph.D., a psychologist at Family Life Counseling. In her Psychological Evaluation of Plaintiff, Dr. McGrath wrote that Plaintiff was cooperative with the evaluation process but had some difficulty responding to questions, prompts, and requests, often appearing perplexed by simple instructions at times. He also struggled to clearly express himself in his responses. He frequently failed to respond to social cues, avoided eye contact, did not smile, nor return a simple greeting or respond to basic questions like "How are you today?" Plaintiff exhibited flat affect and mood

3

was subdued. Plaintiff stuttered and had difficulty articulating his thoughts, reflecting tangential thought patterns as well as residual speech issues.

Dr. McGrath also wrote that recent, remote, and immediate memory skills were very poor, and that Plaintiff had difficulty remembering specific information related to his personal history, even struggling to recall his middle name. Plaintiff also frequently answered "I don't know," even to questions about his current functioning, and presented with poor insight and judgment. Plaintiff also appeared with below-average hygiene.

For her summary and recommendations, Dr. McGrath found Plaintiff to be highly passive and introverted and unlikely to openly express himself for fear of self-exposure. She also found Plaintiff to have an acute discomfort with social interactions, a deep mistrust of others and a poor ability to cope with stress. She further wrote that Plaintiff's "dysfunctional social interaction, emotional expression, and adaptive behavioral skills impair his ability to function fully as an adult." Dr. McGrath then opined on several avenues to help Plaintiff overcome these issues, including small group intervention programs, referral to an appropriate vocational program, a GED study group, and exploration of GED accommodations.

On April 25, 2017, Dr. McGrath again evaluated Plaintiff. She noted that he did not remember her form their hours-long evaluation in January 2016. Plaintiff

told Dr. McGrath that he had begun receiving services at Crider Center including case management and job placement assistance. He noted that working with a case manager had been helpful and that he was still interested in job placement services. At this appointment, Plaintiff again appeared with below-average hygiene and again had "some difficulty" responding to questions and prompts. Dr. McGrath noted that Plaintiff's focus, effort, and motivation to do well on cognitive testing were very good. She noted that he did not give up easily, although it took an extensive amount of time for him to work through paper and pencil materials.

Dr. McGrath wrote that cognitive testing showed that Plaintiff's composite IQ was 107, placing him with average intellectual abilities and indicating that he has sufficient cognitive resources for learning, comprehension, problem solving, and decision making. For her summary and recommendations, Dr. McGrath repeated her conclusion from January 2016 that Plaintiff's "dysfunctional social interaction, emotional expression, and adaptive behavioral skills impair his ability to function fully as an adult," followed by the same list of avenues or resources to help Plaintiff overcome these issues.

On March 8, 2016, Plaintiff attended an appointment with Richard Buckles, DO at Compass Health Network. At this appointment, Dr. Buckles noted that Plaintiff was a "non-historian," appeared paranoid, quiet, and did not communicate.

On May 4, 2017, Plaintiff attended an appointment with John Emmons, DO at Compass Health Network. At this appointment, Dr. Emmons noted that Plaintiff's memory was normal and that he exhibited appropriate mood and affect.

The record also includes case manager notes from Crider Health Center ranging from June 28, 2016 to January 3, 2018. At the June 28, 2016 visit, Plaintiff was involved in playing video games and did not communicate much with the case manager; his grandmother answered most of the case manager's questions. On August 1, 2016, Plaintiff was too tired to communicate with the case manager, but on August 4, he stated that he was okay and completed a form "as best he could." On May 4, 2017, Plaintiff refused to have his finger pricked for a metabolic screen, even after his grandmother's urging. On June 6, 2017, Plaintiff stated that he was alright but did not want to get his blood drawn. Plaintiff's grandmother reported wanting a second psychiatric opinion for Plaintiff, as testing at a recent evaluation revealed no new diagnoses. On September 11, 2017, the case manager reported that Plaintiff answered questions for a form as best he could. On September 27, 2017, the case manager did not speak to Plaintiff, but his grandmother said that she did not want him to stay in services. On October 19, 2017, he reported doing well, did not know what he wanted to do, and expressed his dislike of taking medication. On November 17, 2017, he stated that he did not like to take medications and did not plan on seeing a psychiatrist. He also stated that he plays games all day and is

smart in politics. On November 27, 2017 he reported that he was doing well and had a hard time coming up with things to do. At the January 3, 2018 visit, Plaintiff reported that he had met a girl online that he would like to visit and that he wanted to work with a counselor to address his fear of needles.

### Hearing Testimony

On June 28, 2018, Plaintiff appeared and testified at a hearing before ALJ Chandreka Allen. Plaintiff testified that he lives with his grandparents. Plaintiff testified that he could not remember the highest grade he completed in school, did not finish high school, and did not have a GED. He testified that he had done vocational training at Goodwill about a year prior but could not get a job there because he has no GED. Plaintiff testified that his grandmother helps him keep track of things but could not remember what things, specifically. Plaintiff testified that he does not do food shopping and that his grandparents cook most of the time. He also testified that he cooks things is in the microwave but has not learned to use the stove yet.

Plaintiff testified that his friends are all online, that about one or two are close friends and the rest are acquaintances. He testified that he talks to someone online at least once a week. Plaintiff testified that he has had in-person friends in the past that he got along with but that he rarely saw them and has since just stopped talking to them. He testified that whether or not he trusts the person he is

talking to depends on the person. Plaintiff testified that he does no activities outside the home. He testified that he stays inside all day on the internet, playing a computer game, watching something, or talking to someone online. Plaintiff testified that he reads articles and guides online about topics he needs or wants to look up. Plaintiff testified that he does his own laundry, vacuums, and cleans the bathroom. He testified that he does not do any outside chores. Plaintiff testified that he has never lived on his own. He was unsure whether he could manage his own finances.

Peggy Eich ["Peggy"], Plaintiff's grandmother, also testified at the hearing. Peggy testified that Plaintiff has to be constantly reminded to do things like shower, chores, or get ready to leave the house for appointments. She also testified that he has no concept of time in that it takes him two hours to get dressed. Peggy testified that she can give Plaintiff directions to do a household chore, but that he will not remember the instructions the following day and has to be reminded. Peggy testified that Plaintiff is very quiet and does not socialize. She testified that when Plaintiff is going to come into contact with someone, she has to reassure him that it is okay. Peggy testified that the only other people Plaintiff interacts with are his two cousins. Peggy testified that Plaintiff spends all of his time in his room, alone. She testified that he only does one thing at a time, which is why it takes him so long to get dressed. Peggy testified that she takes Plaintiff to all doctor visits,

which is about twice a year for checkups. She testified that he is very fearful of needles which has prevented him from getting dental work. Peggy testified that Plaintiff has no ongoing psychological counseling, that they started with a counselor but then she was out of the office for several weeks and they have never gotten back to it. She also testified that an employment specialist had tried to work with Plaintiff to get him a job, but it was unsuccessful in that "it didn't work out." Peggy testified that at McDonald's, for example, he was offered a job cleaning but he "couldn't do that."

A vocational expert also testified at the hearing and provided vocational interrogatory responses after the hearing.

## **Legal Standard**

To be eligible for DBI under the Social Security Act, Plaintiff must prove that he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual will be declared disabled "only if [his] physical or mental impairment or impairments are of such severity that [he] is not

only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). At Step One, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. At Step Two, the ALJ considers whether the claimant has a "severe" impairment or combination of impairments. At Step Three, the ALJ determines whether the severe impairment(s) meets or medically equals the severity of a listed impairment; if so, the claimant is determined to be disabled, and if not, the ALJ's analysis proceeds to Step Four. At Step Four of the process, the ALJ must assess the claimant's residual functional capacity (RFC) – that is, the most the claimant is able to do despite his physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform any past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process).

The claimant bears the burden through Step Four of the analysis. If he meets this burden and shows that he is unable to perform his past relevant work, the burden shifts to the Commissioner at Step Five to produce evidence demonstrating

that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with his impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 Additionally, the Court must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision; the Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *Id; see also Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).

## Decision of the ALJ

At Step One of the of the decision from October 25, 2018, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 16, 2016,

11

his application date. At Step Two, the ALJ found that Plaintiff had the severe

impairments of learning disability, depression, panic disorder, and schizoid

personality disorder. The ALJ found Plaintiff did not have an impairment or

combination of impairments listed in or medically equal to one contained in the

Listings, 20 C.F.R. part 404, subpart P, appendix 1, (20 CFR 404.1520(d),

404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

The ALJ determined that plaintiff retained the residual functional capacity to

perform a full range of work at all exertional levels but with the following non-

exertional limitations: plaintiff is limited to simple, routine, repetitive tasks with

few changes in the work setting. He should have only occasional interaction with

supervisors and coworkers, no interaction with the general public, and no tandem

tasks.

At Step Four, the ALJ found that plaintiff has no past relevant work. At Step

Five, the ALJ found that there are jobs that exist in significant number in the

national economy that Plaintiff could perform, such as a bagger of laundry, packer

of shoes, and machine feeder. Therefore, the ALJ found Plaintiff not disabled.

## **Statement of the Issues**

Generally, the issues in a Social Security case are whether the final decision

of the Commissioner is consistent with the Social Security Act, regulations, and

applicable case law, and whether the findings of fact are supported by substantial

evidence on the record as a whole. The issues here are whether the ALJ's finding that Plaintiff's mental impairments do not meet or equal the criteria of Listing 12.08 for presumptive disability is supported by substantial evidence, and whether the ALJ afforded adequate weight to the opinion of Dr. McGrath.

## Discussion

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968. Additionally, the Court must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citing *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002)).

## ALJ's Determination that Impairments Did Not Meet or Equal Listing 12.08

Plaintiff argues that the ALJ's determination that his mental impairments do not meet or equal the criteria of Listing 12.08 is not supported by substantial evidence and that evidence in the record shows that his impairments do meet Listing 12.08. Listing 12.08 covers personality and impulse-control disorders. To meet this listing, a claimant must have:

> A. Medical documentation of a pervasive pattern of one or more of
>    the following:
>    1. Distrust and suspiciousness of others;
>    2. Detachment from social relationships;
>    3. Disregard for and violation of the rights of others;
>    4. Instability of interpersonal relationships;
>    5. Excessive emotionality and attention seeking;
>    6. Feelings of inadequacy;
>    7. Excessive need to be taken care of;
>    8. Preoccupation with perfectionism and orderliness; or
>    9. Recurrent, impulsive, aggressive behavioral outbursts.
> AND
> B. Extreme limitation of one, or marked limitation of two, of the
>    following areas of mental functioning (see 12.00F):
>    1. Understand, remember, or apply information (see 12.00E1).
>    2. Interact with others (see 12.00E2).
>    3. Concentrate, persist, or maintain pace (see 12.00E3).
>    4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, §12.08. A moderate limitation means that a claimant has a fair ability to function independently, appropriately, and effectively. *See* id. § 12.00F2. A marked limitation means that a claimant has a seriously limited ability to function independently, appropriately, and effectively. *See* id. An extreme limitation means that the claimant cannot function independently, appropriately, and effectively. *See* id.

The ALJ found that the "paragraph B" criteria were not satisfied, specifically that Plaintiff had only moderate limitations in each of the "paragraph B" areas of: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and, adapting or managing oneself. Plaintiff contends that the ALJ erred in determining that Plaintiff's limitations were moderate. In support of this arguments, Plaintiff recites SSA rules followed by the conclusory statement that "[t]he record of the treating doctor and the facts found in the decision show these are marked limitations." Additionally, for each "paragraph B" area, Plaintiff quotes portions of the ALJ's findings as to each functional area, followed by a conclusory statement that the quoted evidence represents marked limitations. Plaintiff's claims fail because the ALJ's determinations of moderate limitations in each "paragraph B" area are supported by substantial evidence in the record. The Court reiterates its standard of review: If the ALJ's decision is supported by substantial evidence, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome. *See, e.g. Cline*, 771 F.3d at 1102.

The ALJ's finding of a moderate limitation in the area of understanding, remembering, or applying information is supported, as the ALJ wrote, by Plaintiff's allegations of occasional confusion and problems with written and spoken instructions and his exhibiting some difficulty responding to questions and

appearing perplexed by simple questions in a psychiatric examination. Although Plaintiff contends that these findings "are marked limitations," the presence of some functional limitations does not necessitate a finding that the limitations are marked. As noted by the ALJ, objective testing by Dr. McGrath showed that Plaintiff's IQ is 107, in the average range for cognitive functioning and indicating that Plaintiff has sufficient cognitive resources for learning, comprehension, problem solving, and decision making. Additionally, Plaintiff's focus, effort, and motivation on cognitive testing were very good. Moreover, it is evident that Plaintiff has a fair ability to understand and apply information – he takes direction from his grandmother, he appropriately answered questions while giving testimony at the hearing, and he participated in a vocational program at Goodwill with no reported issues.

As for memory, although Dr. McGrath noted Plaintiff's memory as "very poor" in 2016 and 2017, his memory was also noted as normal Dr. Adamo on April 24, 2013 and Dr. Emmons on May 4, 2017. Although Plaintiff's grandmother testified that he must be "constantly reminded" to do things, Plaintiff exhibited no issues with remembering "assignments" given to him by Dr. Adamo in 2013 and exhibited only some issues remembering information at the SSA hearing. The substantial evidence supports a finding of only moderate limitation in remembering

information. The ALJ did not err in finding Plaintiff moderately limited in the area of understanding, remembering, or applying information.

Substantial evidence also supports the ALJ's determination that Plaintiff is moderately limited in interacting with others. As the ALJ noted, Plaintiff has exhibited avoidant behavior, including not communicating with a doctor during a March 8, 2016 office visit, having poor eye contact, and staying at home all day alone in his room. However, an abundance of evidence demonstrates that Plaintiff has a fair ability to interact with others. For example, educational records and Plaintiff's SSA forms and testimony establish that he has no problems getting along with people and talks with family members every day. Plaintiff testified that he previously had in-person friends and stopped seeing them not for any issues with interaction, but because their visits were rare and eventually stopped. Plaintiff also testified that he seeks out friends to talk to online and reported to Dr. McGrath that he and friends online humorously insult each other. This evidence certainly supports some limitation, but the ALJ did not err in finding that Plaintiff had a fair ability rather than a seriously limited ability to independently, appropriately, and effectively interact with others.

Substantial evidence also supports the ALJ's determination that Plaintiff is moderately limited in the functional area of concentrating, persisting, or maintaining pace. For this area, Plaintiff argues that two of the evidentiary pieces

17

cited by the ALJ in her decision "are also marked limitations:" the first is that Plaintiff performs personal care activities at a slow pace due to rigid thinking, and the second is that education records noted the claimant worked very slowly, required repeated prompts, and lacked motivation to complete assignments. As stated above, evidence of some functional limitations does not necessarily mean that Plaintiff is *markedly* limited in that area. Plaintiff offers no argument as to why slowly performing personal care activities necessitates a finding of marked limitation. As for the evidence in Plaintiff's educational records, Plaintiff ignores the more recent evidence that on cognitive testing, focus, effort and motivation to do well were very good, although pace on paper-and-pencil items was slow. His case worker had also noted that his concentration was good, an observation supported by Plaintiff's testimony that he plays video games all day. The ALJ did not err in finding that Plaintiff had a fair ability to independently, appropriately, and effectively concentrate, persist, or maintain pace.

Substantial evidence also supports the ALJ's determination that Plaintiff is moderately limited in the functional area of adapting or managing oneself. Adapting or managing oneself refers to regulating emotions, controlling behavior, and maintaining well-being in a work setting. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.08E4. For this area, Plaintiff contends that the ALJ's findings that "claimant had poor insight and judgment and could not answer questions about his

own functioning," that he exhibited below-average self-care and hygiene, and that he reportedly took two hours to shower "are marked limitations." Again, although below-average hygiene, poor insight, and inability to answer questions about his functioning at one exam are indicative of limitation in this area, the ALJ did not err in finding that Plaintiff's ability to adapt and manage himself is not "seriously limited." This is particularly true given that Plaintiff sometimes exhibited average insight and judgment and was often cooperative with psychological and medical examiners.

The ALJ's determination that Plaintiff does not meet the criteria for Listing 12.08 is supported by substantial evidence on the record and will not be disturbed.

## **Dr. McGrath's Opinion**

Plaintiff contends that the "ALJ failed to comply with 20 C.F.R. § 404.1527 by failing to accord adequate weight to the opinion of the claimant's treating physician/psychiatrist." Evidently, Plaintiff takes issue with the fact that although Dr. McGrath's evaluations list marked limitations in Plaintiff's ability to carry out instructions, ability to interact, and ability to respond appropriately to supervisors and for changes in the work environment, the ALJ gave "little weight" to Dr. McGrath's opinion and found only moderate limitations in each of these "paragraph B" areas. Plaintiff recites the applicable law for weighing a treating source's opinion but again provides no legal argument in support.

19

The ALJ clearly stated that Dr. McGrath only evaluated Plaintiff twice, more than a year apart, and had no other treatment or interaction with Plaintiff outside of those evaluations. As Defendant correctly argues, such a limited relationship does not necessarily entitle Dr. McGrath's opinion to controlling weight as a treating source. *See, e.g. Kerns v. Colvin*, No. 4:15-CV-1483-CAS-JMB, 2016 WL 4367219, at *12 (E.D. Mo. July 27, 2016) (two visits with a doctor did not establish an ongoing treating relationship as required by the regulations for a medical opinion to be eligible for controlling weight); *Hyde v. Colvin*, No. 6:12-3200-DGK-SSA, 2013 WL 5322779, at *2 (W.D. Mo. Sept. 23, 2013) (medical opinion not entitled to controlling weight because the physician had seen the claimant only twice); *Brown v. Colvin*, No. 4:14-CV-657-RLW, 2015 WL 4168203, at *11 (E.D. Mo. July 9, 2015) (same).

"[T]he hearing examiner need not adopt the opinion of a physician on the ultimate issue of a claimant's ability to engage in substantial gainful employment." *Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007) (quoting *Qualls v. Apfel,* 158 F.3d 425, 428 (8th Cir.1998)). "It is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record." *Wagner*, 499 F.3d at 849 (quoting *Prosch v. Apfel,* 201 F.3d 1010, 1013–14 (8th Cir.2000)).

Here, the ALJ thoroughly analyzed the record and provided examples of evidence that conflicted with Dr. McGrath's opinion on the "paragraph B" factors and Plaintiff's ability to work. In distinguishing Dr. McGrath's opinion from the rest of the record, the ALJ considered more normal observations recorded in his Crider records and Plaintiff's refusal of treatment and satisfaction with his current situation. The latter consideration is especially pertinent given that Dr. McGrath's opinion ended with a specific list of items that would help Plaintiff "address [his] issues and assist [him] in becoming a more functional individual." However, as noted by the ALJ, although Plaintiff has had opportunities to seek and participate in treatment, he has not done so.

As described at length above, the ALJ's determinations about Plaintiff's abilities as related to the "paragraph B" criteria are supported by substantial evidence. Further, Dr. McGrath was not entitled to consideration as a treating provider due to her limited and intermittent relationship with Plaintiff, and the ALJ provided good reasons for giving little weight to Dr. McGrath's opinion. Plaintiff's contention that the ALJ accorded improper weight to Dr. McGrath's opinion is unavailing.

## Conclusion

After careful review, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. *Perkins v. Astrue,* 648 F.3d 892,

900 (8th Cir.2011).  The ALJ's opinion is supported by substantial evidence in the record, and therefore is affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 3rd day of  December, 2020.


                _____

                HENRY EDWARD AUTREY

                UNITED STATES DISTRICT JUDGE